```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

-------------------------------x
NORBERTO RIVERA,               :
          Petitioner,          :
                               :
v.                             :    Civ. No. 3:03CV1664(AWT)
                               :
THERESA LANTZ,                 :
          Respondent.          :
-------------------------------x
```

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Norberto Rivera, is a state prisoner who brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his 1990 conviction for murder, criminal attempt to commit murder and assault in the first degree.

### I.   PROCEDURAL BACKGROUND

On July 13, 1990, a Connecticut Superior Court jury convicted the petitioner of one count of murder, one count of criminal attempt to commit murder and one count of assault in the first degree. The petitioner was sentenced to 70 years imprisonment on August 30, 1990. On November 19, 1991, the Connecticut Supreme Court affirmed the judgment of conviction. State v. Rivera, 220 Conn. 408 (1991).

On May 20, 1992, the petitioner filed a habeas petition in state court challenging his conviction on the ground that he was not afforded effective assistance of counsel at trial. On November 10, 1997, the petitioner filed a second amended petition, which was finally amended on April 11, 1999. The state

habeas court dismissed the petition on December 30, 1999. Rivera v. Warden, No. CV 921467, 1999 WL 1328081 (Conn. Super. Ct. Dec. 30, 1999). The Connecticut Appellate Court affirmed the habeas court's judgment on June 18, 2002. Rivera v. Comm'r, 70 Conn. App. 452 (2002). The Supreme Court denied the petition for certification for appeal on September 12, 2002. Rivera v. Commissioner, 261 Conn. 921 (2002). On May 3, 2004, the petitioner filed the present federal habeas petition. (Am. Pet. (Doc. No. 4).)

## II. FACTUAL BACKGROUND

The petitioner was convicted of shooting and killing Fernando Fuentes ("Fuentes") and shooting and wounding Rosendo Javier Mautino ("Mautino") on July 2, 1998 in front of Club Peru in Hartford, Connecticut. The Connecticut Appellate Court determined that the jury reasonably could have found the following facts underlying the petitioner's conviction. Javier Mautino is the brother of the petitioner's former girlfriend, Maria Ortiz ("Ortiz"). In 1984, Ortiz ended her relationship with the petitioner. The petitioner was angry at her and blamed her family for interfering with their relationship. On February 3, 1987, in a recorded conversation with Ortiz, the petitioner threatened to kill Mautino. Additionally, in June of 1988, shortly before the incident underlying the petitioner's conviction, the petitioner placed several telephone calls to

Ortiz's sister, telling her that he planned to kill Mautino.

On the evening of July 1, 1988, Mautino, Fuentes and the petitioner were at Club Peru. The petitioner argued with Mautino and challenged him to a fight. When Mautino refused to fight, the petitioner called him a coward and left the club. The petitioner, who remained outside the club, shot both Mautino and Fuentes when they walked outside. Fuentes died from the gunshot wounds. Mautino survived the assault but died from cancer before the petitioner's trial. As a result of that incident, the state charged the petitioner with murder in violation of Connecticut General Statutes § 53a-54a(a), criminal attempt to commit murder in violation of C.G.S. §§ 53a-54a(a) and 53a-49(a)(2) and assault in the first degree in violation of C.G.S. § 53a-59 (a)(1).

In addition to these facts, the following facts from the record are relevant. At trial, Mautino's sisters testified that the petitioner contacted them and stated: (1) "You know me, I already killed one, and tonight, you are going to see the rest. . . . I am going to blow up your business tonight," (2) "I shot your brother, I am going to kill your brother. I am going to finish with your brother, I am going to get your sister. I am going to get the whole family," (3) that he had only "started what he planned to do," and (4) that he would shoot Mautino "in the head," because Mautino was the only witness to the incident in question. Rivera, 220 Conn. at 414. Luz Gonzalez, who knew

the petitioner through her boyfriend, testified that following the incident, the petitioner confessed to her that he "had to kill . . . the Peruvian guy," and repeated "I killed him, I killed him." (Mem. Opp. Writ at 13 (citing T. 6/26/90 at 81-89)).

The petitioner testified at trial that he left town following the incident and stayed with relatives until he eventually turned himself in. (Id. at 28 (citing T. 3/4/98 at 90-94)). His probation officer also testified that the petitioner called her, told her he knew he was wanted by the police and was not going to return to Connecticut. (Id. at 29 n.22 (citing T. 6/26/90 at 23-26)). Additionally, the petitioner testified that he called his probation officer from Illinois and contrived a story that Fuentes attacked him with a baseball bat the night of the shooting. (Id. (citing T. 3/4/98 at 95)).

### III. STANDARD OF REVIEW

A federal court will "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in

state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of the habeas statute, federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). "Clearly established federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal citations omitted).

   A decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 404-05 (2000)). "Contrary to" means "diametrically different, opposite in character or nature, or mutually opposed" to the relevant Supreme Court precedent. See Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir.

5

2006).  A state court unreasonably applies Supreme Court law when "the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  Id.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established law was objectively unreasonable."  Id. at 409.  "[A]n unreasonable application of federal law is different from an incorrect application of federal law."  Id. at 410 (emphasis in original).

When reviewing a habeas petition, a federal court presumes that the factual determinations of the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  Id.  Because collateral review of a conviction applies a different standard than a direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition.  See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993); see also Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) ("Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.").

**IV.   DISCUSSION**

The petitioner challenges his conviction on the ground that he was denied his Sixth Amendment right to effective assistance of counsel. An ineffective assistance of counsel claim is reviewed under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "It is past question that the rule set forth in <u>Strickland</u> qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000) (internal citations omitted). Supreme Court precedent dictates that the Connecticut state courts should have applied the <u>Strickland</u> test in deciding the petitioner's ineffective assistance of counsel claim. <u>See</u> <u>id.</u> Thus, the petitioner is entitled to relief if the appellate court's decision rejecting his ineffective-assistance claim was either "contrary to, or involved an unreasonable application of" <u>Strickland</u>. <u>Id.</u>

Under <u>Strickland</u>, the petitioner first "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."[1] 466

---

[1] Here, there is no dispute that the first prong of <u>Strickland</u> is satisfied. The state habeas court determined that trial counsel's performance was deficient under <u>Strickland</u>. First, the court noted that counsel failed to cross-examine and expose certain inconsistencies in Mautino's testimony concerning whether he agreed to go outside to fight the petitioner and whether there was actually a fight. Second, the habeas court

7

U.S. at 687.  Second, the petitioner "must show that the deficient performance prejudiced the defense."  Id.  To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  Rompilla v. Beard, 545 U.S. 374, 381 (2005).  "In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."  Id. at 695.

The petitioner makes three principal arguments.  First, he argues that the state habeas court's decision was contrary to clearly established federal law because it applied the preponderance of the evidence standard to its review of Strickland's prejudice prong instead of the reasonable probability standard.  He contends that to the extent the state appellate court correctly identified the proper standard, the court's decision was an unreasonable application of Strickland.

---

found trial counsel's representation deficient regarding his failure to impeach Mautino about the location of his car.  Thus, the petitioner focuses his argument exclusively on the prejudice component of the Strickland test.

Second, he argues that the state appellate court's decision was contrary to clearly established federal law because the court applied the Lockhart prejudice test instead of the Strickland prejudice test. Third, he argues that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The court first addresses the petitioner's arguments that the state court decisions were contrary to federal law, second, the petitioner's argument that the state appellate court decision was an unreasonable application of federal law, and finally, the petitioner's argument that the state habeas court's decision was based on an unreasonable determination of the facts.

### A.   Whether the State Habeas Court's Decision was Contrary to Clearly Established Federal Law

The petitioner argues that the state habeas court's decision was contrary to clearly established federal law because it used the preponderance standard instead of the reasonable probability standard required by Strickland. The court need not address this argument, however, because the appellate court determined that the state habeas court applied the incorrect standard. See Rivera v. Comm'r, 70 Conn. App. at 455 n.1. The material issue here is whether the state appellate court's prejudice analysis was contrary to or an unreasonable application of clearly established federal law.

9

### B.   Whether the State Appellate Court's Decision was Contrary to Clearly Established Federal Law

The petitioner argues that the state appellate court's decision was contrary to clearly established federal law because it applied the incorrect standard for prejudice. Specifically, the petitioner contends that the state appellate court's prejudice inquiry was directed to the fairness of the trial and not whether its outcome would have been different, as required by Strickland.

The Appellate Court of Connecticut applied the Connecticut standard for ineffective assistance of counsel. Under this standard,

> [t]he petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial . . . A reviewing court can find against petitioner on either ground, whichever is easier.

Rivera v. Comm'r, 70 Conn. App. 452, 455-56 (2002) (citing Mercer v. Comm'r, 31 Conn. App. 771, 774 (1993) (rev'd on other grounds) (internal citations omitted). The Connecticut standard differs from the Strickland standard in that the prejudice inquiry under the Connecticut standard focuses on whether counsel's deficient performance "deprived him of a fair trial," whereas the Strickland standard asks whether "but for counsel's unprofessional errors" there is a "reasonable probability that

10

the outcome of the proceedings would have been different." See Henry v. Poole, 409 F.3d 48, 69 (2d Cir. 2005). In other words, "the [Connecticut] standard's prejudice component . . . focuses on the fairness of the process as a whole rather than any particular impact on the outcome of the case." Id. (internal quotations omitted) (emphasis in original).

The Second Circuit confronted a similar situation in Henry v. Poole where it examined New York's test for ineffective assistance of counsel. Speaking to the difference between the New York and Strickland tests, the court noted, "whereas both tests contain a prejudice component, the touchstone of the New York test is the fairness of the process of a whole, while the federal test considers the outcome of the proceeding for the defendant." Id. (internal citations omitted). The court went on to state that "[n]otwithstanding that difference, this Court has ruled on at least three occasions that the New York standard . . . "is not 'contrary to' the Strickland standard for purposes of § 2254(d)(1)." Id. at 69-70 (citing Eze v. Senkowski, 321 F.3d 110, 122-24 (2d Cir. 2003); Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001); Loliscio v. Goord, 263 F.3d 178, 193 (2d Cir. 2001)). Likewise, the Connecticut standard is not "contrary to" Strickland.

Additionally, even if the Connecticut test was contrary to Strickland, the Appellate Court of Connecticut's analysis

11

complied with the Strickland standard. While the appellate court did not specifically articulate the federal standard in its analysis of counsel's failure to impeach Mautino's testimony, the court correctly stated the standard in two other sections of the opinion. See Rivera v. Comm'r, 70 Conn. App. 452, 455 n.1, 460 (2002). Moreover, with respect to counsel's failure to impeach Mautino's testimony, the court concluded "that had [trial counsel] impeached Mautino's testimony, such elicitation would have proven trivial at best because it would not have refuted the 'totality of the evidence before the judge or jury.' " Id. at 459 (citing Strickland, 466 U.S. at 695). Thus, notwithstanding the fact that the language used by the appellate court centered on the fairness of the trial, the court's decision explicitly relied on its determination that the outcome of the proceeding would not have changed had counsel performed effectively.

    **C.  Whether the State Appellate Court's Decision was an Unreasonable Application of Clearly Established Federal Law**

The petitioner argues that the state appellate court's prejudice determination was an unreasonable application of Strickland. "Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. A

12

state court's prejudice determination is "unreasonable insofar as it fail[s] to evaluate the totality of the available mitigation evidence- both that adduced at trial, and the evidence adduced in the habeas proceeding." Id. at 397; see also Wiggins v. Smith, 539 U.S. 510, 534 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.").

Here, the petitioner argues that the state appellate court's prejudice determination was unreasonable because it was not supported by the entire record. Specifically, he contends that neither the habeas court nor the appellate court analyzed the habeas testimony of Detectives Michaud and Gervais in light of the eyewitness testimony of three witnesses who testified that the petitioner was not the shooter. Also, in his deposition, Mautino testified that when he left the club, he turned north to get onto the street. He further testified that the petitioner was standing "very near" Mautino's car, which was across the street and close to a light pole. At the habeas hearing, however, Detective Michaud testified that Mautino's car was 145 feet south of where the shooting took place. Detective Gervais's habeas testimony also confirmed that Mautino's car was south of the club, contradicting Mautino's version of events. The petitioner contends that, had the jury heard the detectives' testimony that the two detectives independently found Mautino's

car south of the crime scene, Mautino's credibility would have been undermined, the testimony of the three eyewitnesses that the petitioner was not the shooter would have been bolstered and the outcome of the trial would have been different.  The court disagrees.

After reviewing the record in its entirety, the court finds that the totality of the evidence properly before the jury was so compelling that there is no reasonable probability that the outcome of the trial would have been different had trial counsel acted effectively.  The evidence of the petitioner's guilt was overwhelming.  As the appellate court noted, testimony revealed that the petitioner threatened to kill Mautino and that he stated his intention to Ortiz's sister.  Additionally, Mautino was within five or six feet of his shooter and unambiguously identified the petitioner as his shooter.  He testified not only that he saw the petitioner shoot him, but also that he heard the petitioner say: "So there are two of you, so there is two for one;" "Now everybody knew who [the petitioner] was;" and "I am going to kill you."  The jury credited this testimony over the testimony from the three eyewitnesses who testified at trial that the petitioner was not the shooter.  Moreover, the state habeas court reviewed Mautino's deposition tape and noted that the jury could reasonably have found Mautino's testimony "credible and compelling."  <u>Rivera v. Warden</u>, No. CV 921467, 1999 WL 1328081,

at *4 (Conn. Super. Dec. 30, 1999).

The jury also heard testimony from Mautino's sisters that the petitioner contacted them after the shooting and stated: (1) "You know me, I already killed one, and tonight, you are going to see the rest. . . . I am going to blow up your business tonight," (2) "I shot your brother, I am going to kill your brother.  I am going to finish with your brother, I am going to get your sister.  I am going to get the whole family," (3) that he had only "started what he planned to do," and (4) that he would shoot Mautino "in the head," because Mautino was the only witness to the incident in question.  Luz Gonazlez testified that the petitioner confessed to her that he "had to kill . . . the Peruvian guy," and repeated "I killed him, I killed him."  The petitioner testified that he fled after the shooting and fabricated a story about Fuentes attacking him with a baseball bat the night of the shooting.  The jury also heard testimony from the petitioner's probation officer, who stated that the petitioner called her and told her that he knew he was wanted by the police and was not going to return to Connecticut.

Based on a review of the totality of the evidence, the court agrees with the state appellate court that the petitioner did not suffer any prejudice because the outcome of his trial would not have been different had counsel acted effectively.

### D.  Whether the State Habeas Court's Decision was Based on an Unreasonable Determination of the Facts

Finally, the petitioner argues that he is entitled to relief under § 2254(d)(2) because his incarceration resulted from "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Specifically, he contends that the state habeas court committed clear factual error when it decided that Rivera was not prejudiced by trial counsel's omission.

In reaching its conclusion that the petitioner was not prejudiced by trial counsel's omission, the state habeas court noted: "Mautino indicates a shorter hispanic male may have been with Rivera thus making Rivera the 'taller' shooter. This would have been consistent with the other witnesses." Rivera v. Warden, No. Cv 921467, 1999 WL 1328081, at *8 n.6 (Conn. Super. Dec. 30, 1999). The petitioner takes issue with this characterization of the facts because at trial, three defense eyewitnesses testified that (1) Rivera was fighting Mautino in the street; (2) Rivera was not the shooter, and (3) Rivera was taller than the shooter. He argues that the Appellate Court of Connecticut did not specifically review his claim that the habeas court's factual error affected its prejudice analysis. The court need not address this argument, however, because for the reasons set forth in Section IV.C, it finds that the petitioner was not prejudiced by trial counsel's omissions. See Henry v. Poole, 409

16

F.3d 48, 67 (2d Cir. 2005) (noting that a state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel must show that he meets the Strickland standard and the requirements of 28 U.S.C. § 2254).

## V.  CONCLUSION

The amended petition for a writ of habeas corpus is hereby DENIED.  The Clerk is directed to enter judgment in favor of the respondent and close this case.  Because the petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability.

Signed this 30th day of September, 2011 at Hartford, Connecticut.

                                    /s/AWT
                              Alvin W. Thompson
                          United States District Judge